**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

SINIORA FOOD INDUSTRIES COMPANY PLC, a Jordanian public shareholding company, and
SINIORA FOOD INDUSTRIES, USA, INC., a Delaware corporation,

Plaintiffs,

v.

INTERNATIONAL GOLDEN FOODS, INC.

Defendant.

Case No.

Hon.

---

SCHENK & BRUETSCH PLC
James P. Allen (P52885)
Peter E. Doyle (P81815)
*Attorneys for Plaintiffs*
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs Siniora Food Industries Company PLC ("Siniora") and Siniora Food Industries USA, Inc. ("Siniora USA") (together, "Plaintiffs"), by their undersigned

counsel, state the following for their Complaint against Defendant International Golden Foods, Inc. ("IGF"):

## INTRODUCTION

1. This is an action for trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., for breach of contract, and for trademark infringement and unfair competition under the common law.

2. In August 2024, IGF sold the SINIORA trademark to Siniora for $2,000,000. The sale conveyed U.S. Trademark Registration No. 2,853,886, all associated goodwill, the SINIORA trade dress and packaging, IGF's SINIORA inventory, and all claims for past and future infringement. IGF covenanted that it would never again use the SINIORA mark, or anything confusingly similar to it, anywhere in the world, and that for five years it would not compete in the processed meat business at all.

3. IGF took the money and kept selling. More than two years after the sale, IGF continues to manufacture, distribute, advertise, and sell canned luncheon meat under the identical SINIORA mark, in the very packaging designs it sold to Siniora, through distributors and retailers throughout the United States, including in this District. As recently as June 2026, IGF's corporate website told the public that SINIORA is one of IGF's "own brands."

4. IGF's conduct is willful. Plaintiffs bring this action to stop IGF's infringement and breach and to recover their damages, IGF's profits, and their attorneys' fees.

## PARTIES

5. Plaintiff Siniora Food Industries Company PLC is a public shareholding company organized under the laws of the Hashemite Kingdom of Jordan, with its principal place of business at King Abdullah II Bin Al-Hussein Industrial Estate, Sahab, Amman, Jordan. Siniora's shares are publicly traded on the Amman Stock Exchange (ASE: SNRA). Siniora is the owner of record of U.S. Trademark Registration No. 2,853,886 for the mark SINIORA.

6. Plaintiff Siniora Food Industries USA, Inc. is a Delaware corporation with its principal place of business at 15050 Commerce Drive, Dearborn, Michigan 48120. Siniora USA is Siniora's United States subsidiary. It is the authorized importer and distributor of genuine SINIORA products in the United States.

7. Defendant International Golden Foods, Inc. is an Illinois corporation with its principal place of business at 819 Industrial Drive, Bensenville, Illinois 60106. IGF has described itself as an importer and distributor of specialty Middle Eastern and Mediterranean food products that supplies "retailers, restaurants, wholesalers, and food businesses across the United States."

## JURISDICTION AND VENUE

8. This Court has original subject-matter jurisdiction over Plaintiffs' Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over Plaintiffs' common-law unfair competition claim under 28 U.S.C. § 1338(b). The Court has supplemental jurisdiction over Plaintiffs' remaining state-law claims under 28 U.S.C. § 1367(a) because they arise from the same nucleus of operative facts as the federal claims.

9. The Court also has original jurisdiction under 28 U.S.C. § 1332(a)(3). Siniora USA is a citizen of Delaware and Michigan; IGF is a citizen of Illinois; Siniora is a citizen of a foreign state; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over IGF under Mich. Comp. Laws § 600.715(1) and (2) and the Due Process Clause because IGF transacts business in Michigan and has caused consequences to occur in Michigan resulting in the tort claims asserted here, and because Plaintiffs' claims arise from those Michigan contacts.

11. IGF transacts business in Michigan. On information and belief, IGF sells and ships its products – including SINIORA-branded canned meats – to wholesalers, distributors, and retail grocers located in Michigan, and IGF's SINIORA-branded products are offered for sale and sold in this District.

12. IGF distributes its products nationwide by design. IGF holds itself out to the public as serving "national chain stores, independent retailers, and food-service outlets through a robust network of distributors," states that its Bensenville facility is "strategically located for efficient distribution across the country," and has advertised that its brands, "such as Golden, Siniora, and Crispa," are "found in supermarkets and retail outlets throughout the U.S." IGF also operates an online wholesale ordering portal through which it solicits and accepts orders from customers located throughout the United States, including Michigan.

13. IGF further places its SINIORA-branded products with national online food distributors which advertise IGF's SINIORA products to customers nationwide and ship them to purchasers throughout the United States, including Michigan, where, for years, IGF has deliberately cultivated and served the metropolitan Detroit market.

14. On information and belief, IGF also knew, when it sold the SINIORA mark and throughout its subsequent dealings with Siniora, that Siniora intended to build its United States business (and the goodwill of the mark IGF had just sold) from Dearborn, Michigan. IGF's continued sale of SINIORA-branded goods after the sale was therefore undertaken with knowledge that the resulting confusion and injury would be felt in Michigan.

15. The exercise of jurisdiction is reasonable because Michigan has a strong interest in protecting businesses operating within its borders from infringement and unfair competition, especially where the Plaintiffs' injuries arise from the Defendant's sales of infringing goods into Michigan.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred here, including the offering for sale and sale of infringing SINIORA-branded goods in this District and the resulting injury to Siniora USA's Dearborn-based business and to the goodwill of the SINIORA mark in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because IGF, a corporation, resides in any judicial district in which it is subject to personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### A. The SINIORA Brand and the SINIORA Mark

17. Siniora is one of the oldest and largest manufacturers of processed meats in the Middle East. The SINIORA brand traces its origin to Jerusalem in 1920, and Siniora has manufactured SINIORA products at its facility in Sahab, Jordan since 1992.

18. Siniora produces more than one hundred varieties of halal-certified cold cuts, canned luncheon meats, and frozen meats, which it sells through mass merchandisers, grocery stores, and other retailers throughout the Middle East.

Through more than a century of continuous use, the SINIORA brand has acquired substantial recognition and goodwill among consumers of halal processed meats, including within the Arab-American communities of the United States.

19. In the United States, the mark SINIORA has been registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") since June 15, 2004, as Registration No. 2,853,886 (the "Registration"), for "meat" in International Class 29, with a claimed date of first use in commerce of March 26, 2003. The Registration has been renewed twice, most recently on July 23, 2024, and is valid and subsisting. A declaration under Section 15 of the Lanham Act was accepted in 2010, and the Registration is incontestable under 15 U.S.C. § 1065. A certified copy of the Registration, reflecting title in Siniora, is attached as **Exhibit B**, and the USPTO's current record for the Registration is attached as **Exhibit C**.

20. Before August 2024, the Registration was owned by IGF, which used the SINIORA mark in the United States on canned luncheon meats.

21. The Registration issued in 2004 to, upon information and belief, IGF's predecessor in interest, who subsequently assigned the Registration to IGF. At the time of the Registration, Siniora had not yet entered the US market.

22. On information and belief, IGF adopted for its US cans a similar Siniora logotype and can layout so that consumers in the United States who knew the SINIORA brand from the Middle East would associate IGF's canned meats with

Siniora. The goodwill that attached to the SINIORA mark in the United States thus derived in large part from Siniora's own century-old reputation, and it was that goodwill, together with the Registration, that Siniora purchased from IGF in August 2024.

**B. IGF Sells the SINIORA Mark to Siniora**

23. On August 15, 2024, IGF, as "Seller," and Siniora, as "Buyer," executed an Intellectual Property Purchase Agreement (the "Agreement"), a true and correct copy of which is attached as **Exhibit A**. The Agreement is dated as of August 15, 2024 (the "Effective Date") and closed on August 19, 2024 (the "Closing").

24. In Section 1 of the Agreement, IGF "irrevocably sells, assigns, transfers, and conveys" to Siniora all of IGF's right, title, and interest in the "Siniora Intellectual Property," defined to include all worldwide "trademarks, service marks, trade names, domain names . . . trade dress and logos, including all goodwill associated therewith," specifically including the Registration; "all physical materials, samples, and inventories" relating to the SINIORA brand; and "all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the Closing Date, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement."

25. The Agreement provides that "from and after the Closing, none of Seller or any of its Affiliates will retain hereunder any direct or indirect right, title or interest in any Siniora Intellectual Property."

26. In exchange, Siniora paid IGF a purchase price of $2,000,000.

27. IGF represented and warranted that it exclusively owned the Siniora Intellectual Property free of encumbrances, that there were "no licenses or similar contractual instruments" relating to it, and that IGF had "not authorized any third party to use any Siniora Intellectual Property." (Ex. A, § 7(c), (f).)

28. Contemporaneously with the Agreement, IGF executed a Trademark Assignment (Ex. A, Schedule B) by which it "irrevocably sells, transfers, conveys, assigns and delivers" to Siniora all right, title, and interest in the SINIORA mark, "whether statutory or at common law," together with the associated goodwill and "the right to sue and recover for all past, present and future infringements." In the Trademark Assignment, IGF acknowledged that "from and after the date hereof, [Siniora] shall be the exclusive owner of all of [IGF's] right, title and interest in and to the Trademark."

29. The Trademark Assignment was recorded with the USPTO, and the USPTO's records have reflected Siniora as the owner of the Registration since September 5, 2024. On October 22, 2024, the USPTO issued a certified copy of the Registration confirming that title is in Siniora. (Exs. B, C.)

**C. IGF's Non-Use and Non-Competition Covenants**

30. To protect the goodwill Siniora was purchasing, the Agreement imposes restrictive covenants on IGF and its affiliates that survive the Closing indefinitely. (Ex. A, §§ 9, 12(f).)

31. In Section 9(b) ("Non-Use of Intellectual Property"), IGF agreed that, "[u]nless agreed in writing between the Parties, or as otherwise permitted in this Agreement," IGF and its affiliates "shall not make any use of SINIORA or Siniora Intellectual Property, adaptions or derivative works thereof, or any marks of indicia that may cause a likelihood of confusion therewith anywhere in the world after the Closing, or colorable imitations thereof, in any form, including but not limited to in association [with] goods in Nice classes 29 and 30."

32. In Section 9(a) ("Non-Registration of Intellectual Property"), IGF agreed never to seek registration of the SINIORA mark or anything confusingly similar to it, and agreed that all goodwill arising from Siniora's use of the mark after the Closing "will inure solely to the benefit of" Siniora and its affiliates.

33. In Section 9(c) ("Non-Competition"), IGF agreed that for five years from the Effective Date – that is, through August 15, 2029 – it would not, without Siniora's prior written consent, "directly or indirectly, engage, anywhere in the world," in "processed meats," defined as "any meat that has been modified to alter taste or shelf life, and includes salting, curing, fermenting, smoking, boiling, frying,

or use of chemical preservatives." Canned luncheon meat is processed meat within that definition.

34. Section 9(c) gave IGF two options for its existing canned meat business after the Closing: (a) "stop producing and selling processed meat (canned meat) altogether," or (b) "in agreement with the Buyer, continue selling processed meat under SINIORA brand for an agreed revenue share arrangement (% of top line), i.e. royalties paid to the Buyer for using the Siniora Intellectual Property until the Buyer begins manufacturing its own product and a distribution agreement with the Seller is reached."

35. Option (b) was never exercised. Siniora and IGF never agreed on any revenue share or royalty agreement, IGF has never paid Siniora any royalty or share of revenue, and Siniora has never consented, in writing or otherwise, to IGF's continued sale of SINIORA-branded processed meat after the Closing.

36. IGF acknowledged in Section 9(d) that these covenants "are reasonable and necessary to protect the legitimate interests of Buyer and constitute a material inducement to Buyer to enter into this Agreement."

37. In Section 10 ("Equitable Remedies"), IGF acknowledged that "a breach or threatened breach by Seller of any of its obligations under this Agreement may give rise to irreparable harm to Buyer for which monetary damages would not be an adequate remedy," and agreed that upon any such breach Siniora would be

entitled to "equitable relief, including a restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction, without any requirement to (i) post a bond or other security; or (ii) prove actual damages or that monetary damages will not afford an adequate remedy."

### D. The Distribution Agreement Framework Expires Without Any Agreement.

38. Also on August 15, 2024, Siniora and IGF signed a term sheet titled "Distribution Agreement Framework" (the "Framework"), a true and correct copy of which is attached as **Exhibit D**. The Framework describes itself as a "directional framework" that "sets out the main principles" of a possible future distribution agreement "and is non exhaustive."

39. The relationship the Framework outlined was one in which Siniora, as "Supplier," would be "responsible for product development, R&D, [and] manufacturing," and IGF, as "Distributor," would be "responsible for sales and distribution" of "processed meat products of the Supplier, marketed under the Siniora brand." Nothing in the Framework contemplated IGF manufacturing, sourcing, or selling SINIORA-branded products of its own.

40. The Framework gave the parties a six-month "Evaluation Period" to negotiate and sign a definitive Distribution Agreement and five-year Business Plan. It provided that if, after six months, "the parties have not reached an agreement on the Business Plan and signed the Distribution Agreement, this Distribution

Agreement Framework will be terminated and no longer be valid, with no subsequent obligation or liability on the part of either party, unless both parties agree in writing to extend the Evaluation Period."

41. The parties never agreed on a Business Plan, never signed a Distribution Agreement, and never agreed in writing to extend the Evaluation Period. The Framework therefore terminated by its own terms on February 15, 2025.

42. The Framework never granted IGF any license or other right to use the SINIORA mark, and it contained no revenue share, royalty, or other term that could satisfy Section 9(c) of the Agreement. To the contrary, by signing the Framework on the same day it sold the mark, IGF acknowledged in writing that any continuing role for it in the SINIORA business required a further agreement, which IGF never obtained.

**E. IGF Continues to Sell SINIORA-Branded Products**

43. Notwithstanding the sale of the SINIORA mark, its covenants in Sections 9(b) and 9(c), and the expiration of the Framework, IGF has continued to manufacture or have manufactured, distribute, advertise, offer for sale, and sell canned luncheon meat bearing the SINIORA mark.

44. For example, on May 14, 2026 (nearly two years after the Closing) IGF issued Invoice No. 127657 to a retail supermarket for a shipment of goods that included ten cases of "SINIORA CHICKEN HALAL 12 x 30 OZ." ($848.90), five

cases of "SINIORA CHICKEN & BEEF LUNCHEON MEAT HALAL 24/12 OZ." ($344.45), ten cases of "SINIORA CHICKEN & BEEF LUNCHEON MEAT HALAL 12 X 30 OZ." ($1,023.70), and five cases of "SINIORA TURKEY LUNCHEON HALAL 24/12 OZ." ($349.25). A true and correct copy of the invoice is attached as **Exhibit E**.

45. The products IGF is selling bear the identical SINIORA word mark, rendered in the same distinctive stylized lowercase "siniora" logotype that appears on genuine SINIORA products. Photographs of IGF's SINIORA-branded products are attached as **Exhibit F**.

46. Genuine SINIORA products sold by Siniora USA are packaged in a predominantly blue can bearing the same stylized lowercase "siniora" logotype, together with Siniora's round red-and-yellow roundel logo, the legend "Al Quds since 1920," a ribbon banner identifying the variety, a halal certification emblem, and an image of the sliced product. Photographs of genuine SINIORA products are attached as **Exhibit G**. IGF's cans and genuine SINIORA cans thus share the same brand name, the same logotype, the same product category and can formats, the same gold-and-blue palette, and the same layout of banner, emblem, and product image, and differ only in details that no ordinary grocery shopper would notice or attribute to a different source.

47. IGF's SINIORA-branded cans are not manufactured by, for, or under the control of Siniora, and Siniora exercises no control over their ingredients, quality, or safety.

48. IGF has also publicly claimed the SINIORA brand as its own. As of June 10, 2026, the "About Us" page of IGF's corporate website stated: "Our own brands — such as Golden, **Siniora**, and Crispa — are well established and found in supermarkets and retail outlets throughout the U.S." (emphasis added). A true and correct copy of that page as it appeared on June 10, 2026 is attached as **Exhibit H**. IGF has since revised the page to remove the reference to SINIORA, while continuing to sell SINIORA-branded products.

49. IGF's SINIORA-branded products are also advertised and offered for sale to the public through national online food distributors. The foodservice website FoodService Express maintains a dedicated "International Golden Foods" page that displays and offers for sale "Siniora Chicken & Beef Luncheon Loaf," "Siniora Chicken Luncheon Loaf," and "Siniora Turkey Luncheon Loaf," each depicting the SINIORA mark and packaging. The website Food Innovations offers for sale canned chicken and turkey luncheon meat under the brand name "SINIORA," attributed to "International Golden Foods, Siniora," and ships the product by FedEx Ground. Both listings remain live as of the filing of this Complaint. True and correct copies are attached as **Exhibit I**.

50. On information and belief, IGF's SINIORA-branded products are, through IGF's distributors and customers, offered for sale and sold in retail grocery stores in this District, including in Dearborn and the surrounding communities, in direct competition with genuine SINIORA products distributed by Siniora USA.

51. IGF has never had Siniora's consent to use the SINIORA mark after the Closing. IGF's use is knowing and willful: IGF sold the mark, signed the Trademark Assignment, covenanted never to use the mark again, acknowledged in the Framework that any continuing role required a further agreement, let that agreement lapse, and then continued to sell the same products under the same mark while telling the public that the brand was its own.

**F. Siniora USA and the Harm to Plaintiffs**

52. Having acquired the United States SINIORA mark, Siniora incorporated Siniora USA on August 30, 2024 to import, market, and distribute genuine SINIORA products in the United States. Siniora USA established its headquarters in Dearborn, and has since launched sales of genuine SINIORA-branded products in Michigan and elsewhere in the United States.

53. IGF's goods are the same kind of goods, sold under the identical mark and logotype, in closely similar packaging, through the same wholesale and retail channels, to the same consumers, as genuine SINIORA products. Customer confusion is inevitable. Consumers, retailers, and distributors encountering two lines

of SINIORA canned meat have no reason to suspect that two unrelated companies are selling under the same brand, and every reason to assume that IGF's cans are simply another variety, format, or older packaging of the genuine SINIORA line. The confusion is aggravated by the quality gap between the two products: a consumer or retailer whose first experience of "Siniora" in the United States is IGF's inferior product will attribute that lower quality to Siniora, and complaints about IGF's product are directed to Siniora USA.

54. IGF's conduct diverts sales from Plaintiffs, depresses the price of genuine SINIORA products, confuses the trade about who supplies the SINIORA brand, and obstructs Siniora USA's launch of the brand in the United States. Because Siniora has no control over the quality of IGF's products, every can IGF sells places the reputation of the SINIORA mark (for which Siniora paid $2,000,000) in IGF's hands. Siniora will also be required to undertake corrective advertising and marketing to repair the brand's reputation among consumers in the US market.

55. These injuries are irreparable and cannot be fully remedied by money damages, as IGF itself acknowledged in Section 10 of the Agreement. Unless enjoined, IGF will continue its infringing and unlawful conduct.

## CAUSES OF ACTION

### COUNT I
### Federal Trademark Infringement — 15 U.S.C. § 1114(1)
### (Siniora against IGF)

56. Siniora incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

57. Siniora owns the SINIORA mark and the Registration, which is valid, subsisting, and incontestable. Under 15 U.S.C. § 1115(b), the Registration is conclusive evidence of the validity of the mark, of Siniora's ownership of the mark, and of Siniora's exclusive right to use the mark in commerce on meat products.

58. Without Siniora's consent, IGF has used and continues to use in commerce a reproduction, copy, or colorable imitation of the registered SINIORA mark (indeed, the identical mark) in connection with the sale, offering for sale, distribution, and advertising of canned meat products, the very goods identified in the Registration.

59. IGF's use of the SINIORA mark is likely to cause confusion, mistake, and deception as to the source, sponsorship, affiliation, or approval of IGF's goods, in violation of 15 U.S.C. § 1114(1).

60. IGF's infringement is knowing, deliberate, and willful. IGF has actual knowledge of Siniora's ownership of the mark because IGF sold the mark to Siniora and covenanted not to use it.

61. As a direct and proximate result of IGF's infringement, Siniora has suffered and will continue to suffer damages and irreparable injury to its business, reputation, and goodwill. Siniora is entitled to injunctive relief under 15 U.S.C. §

1116; to recover IGF's profits, Siniora's damages, enhanced damages, and the costs of this action under 15 U.S.C. § 1117(a); to its reasonable attorneys' fees because this is an exceptional case; and to the destruction of infringing articles under 15 U.S.C. § 1118.

**COUNT II**
**False Designation of Origin and Unfair Competition — 15 U.S.C. § 1125(a)(1)(A)**
**(Plaintiffs against IGF)**

62. Siniora incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

63. The SINIORA mark and the stylized "siniora" logotype are distinctive and identify Siniora as the exclusive source of genuine SINIORA products in the United States. The logotype and can layout IGF uses were themselves modeled on Siniora's own identifiers, and are the identifiers by which consumers of halal foods have recognized Siniora for decades. The packaging designs IGF continues to use, and all goodwill associated with them, likewise belong to Siniora under Section 1(a)(ii) of the Agreement.

64. IGF's use in commerce of the SINIORA mark, logotype, and packaging on and in connection with its canned meat products, and its public statement that SINIORA is one of its "own brands," constitute false designations of origin and false or misleading representations of fact that are likely to cause confusion, mistake, or

deception as to the affiliation, connection, or association of IGF with Plaintiffs, and as to the origin, sponsorship, or approval of IGF's goods by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

65. IGF is passing off its goods as genuine SINIORA products and trading on the goodwill of the SINIORA brand, which belongs to Siniora and which Siniora USA is authorized to exploit in the United States.

66. Plaintiffs have suffered commercial injury proximately caused by IGF's conduct, including lost sales, price erosion, injury to reputation and goodwill caused in part by the inferior quality of IGF's products, the cost of corrective advertising, and impairment of Siniora USA's ability to establish the SINIORA brand in the United States market.

67. IGF's conduct is willful. Plaintiffs are entitled to injunctive relief and to recover IGF's profits, their damages, enhanced damages, costs, and, because this is an exceptional case, their reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117(a).

**COUNT III**
**Breach of Contract**
**(Siniora against IGF)**

68. Siniora incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

69. The Agreement is a valid and enforceable contract between Siniora and IGF, supported by consideration.

70. Siniora performed all of its obligations under the Agreement, including payment of the $2,000,000 purchase price.

71. IGF has breached, and continues to breach, Section 9(b) of the Agreement by using the SINIORA mark, the SINIORA logotype, and the packaging designs and other Siniora Intellectual Property it sold to Siniora, in connection with the manufacture, distribution, advertising, offering for sale, and sale of canned meat products after the Closing, without any written agreement permitting such use.

72. IGF has breached, and continues to breach, Section 9(c) of the Agreement by directly or indirectly engaging in the processed meat business—including the manufacture and sale of SINIORA-branded canned chicken, chicken and beef, and turkey luncheon meat—within five years of the Effective Date, without Siniora's prior written consent and without having entered into the agreed revenue share arrangement that Section 9(c)(i)(b) required as a condition of any continued sales.

73. As a direct and proximate result of IGF's breaches, Siniora has suffered damages in an amount to be proven at trial, including lost profits and the diminution in value of the Siniora Intellectual Property. Siniora paid $2,000,000 for, among other things, the exclusive right to use and control the SINIORA mark in the United

States; IGF's breaches have deprived Siniora of that exclusivity and the value of what Siniora purchased has been diminished.

74. IGF's breaches have also caused, and will continue to cause, irreparable harm to Siniora for which there is no adequate remedy at law. Under Section 10 of the Agreement, Siniora is entitled to injunctive relief and specific performance of Sections 9(b) and 9(c), without the posting of a bond and without proof of actual damages.

**COUNT IV**
**Common-Law Trademark Infringement and Unfair Competition**
**(Plaintiffs against IGF)**

75. Siniora incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

76. Siniora owns all statutory and common-law rights in the SINIORA mark in the United States, including in Michigan, and Siniora USA is authorized to use and exploit those rights in the United States.

77. IGF's unauthorized use of the SINIORA mark, logotype, and packaging on identical goods sold in Michigan and elsewhere is likely to cause confusion, mistake, and deception among consumers and the trade, and constitutes trademark infringement and unfair competition, including passing off, under the common law of Michigan.

78. IGF's conduct is willful, deliberate, and in bad faith. IGF sold the SINIORA brand for $2,000,000 and then continued to sell under it as if the sale had never occurred, misappropriating for itself the goodwill it had been paid to convey.

79. As a direct and proximate result, Plaintiffs have suffered and will continue to suffer damages and irreparable injury, entitling them to injunctive relief, compensatory damages, an accounting of IGF's profits, and exemplary damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant International Golden Foods, Inc., and grant the following relief:

A. A preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and Section 10 of the Agreement, enjoining IGF and its officers, agents, servants, employees, affiliates, successors, and assigns, and all persons in active concert or participation with any of them, from (a) manufacturing, having manufactured, importing, distributing, advertising, promoting, offering for sale, or selling any goods bearing the SINIORA mark or any mark, name, or trade dress confusingly similar to it; (b) representing that IGF or its goods are affiliated with, sponsored by, or approved by Plaintiffs, or that SINIORA is a brand of IGF; (c) otherwise

infringing the SINIORA mark or unfairly competing with Plaintiffs; and (d) violating Sections 9(a), 9(b), and 9(c) of the Agreement;

B. An order, pursuant to Section 10 of the Agreement, that such injunctive relief issue without the requirement of a bond or other security;

C. An order, pursuant to 15 U.S.C. § 1118, directing IGF to recall from its distributors and customers, and to deliver up for destruction, all goods, packaging, labels, signs, advertisements, and other materials in its possession, custody, or control bearing the SINIORA mark or any confusingly similar mark or trade dress;

D. An order, pursuant to 15 U.S.C. § 1116(a), directing IGF to file with the Court and serve on Plaintiffs, within thirty days after entry of an injunction, a report in writing and under oath setting forth in detail the manner and form in which IGF has complied with the injunction;

E. An award of IGF's profits from its infringing sales, Plaintiffs' actual damages, and the costs of this action, pursuant to 15 U.S.C. § 1117(a), with such damages enhanced up to three times, and such profits increased, as the Court finds just in light of the willful nature of IGF's conduct;

F. An award of Siniora's damages for breach of the Agreement in an amount to be proven at trial, and specific performance of Sections 9(a), 9(b), and 9(c) of the Agreement;

G. An award of compensatory and exemplary damages for IGF's common-law trademark infringement and unfair competition;

H. A finding that this is an exceptional case and an award of Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

SCHENK & BRUETSCH PLC
By: /s/ Peter E. Doyle
Peter E. Doyle (P81815)
James P. Allen (P52885)
*Attorneys for Plaintiffs*
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@sbdetroit.com
peter.doyle@sbdetroit.com

Dated: October 26, 2026

# EXHIBIT A

# INTELLECTUAL PROPERTY PURCHASE AGREEMENT

This INTELLECTUAL PROPERTY PURCHASE AGREEMENT (this "Agreement"), dated as of August 15, 2024 (the "Effective Date"), is made by and between International Golden Foods, Inc., a corporation incorporated under the laws of the State of Illinois and its Affiliates (the "Seller"), and SINIORA FOOD INDUSTRIES COMPANY, a public shareholding limited company incorporated under the laws of the Hashemite Kingdom of Jordan and registered at the Companies Controller Department under number 459, whose registered address is at PO Box 191, Amman 11512, The Hashemite Kingdom of Jordan, (the "Buyer"). Seller and Buyer are sometimes referred to singly as "Party" and collectively as the "Parties".

WHEREAS, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, all of Seller's right, title, and interest in and to the Siniora Intellectual Property (as defined below), subject to the terms and conditions set forth herein;

NOW THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Purchase and Sale of Siniora Intellectual Property. Subject to the terms and conditions set forth herein, Seller hereby irrevocably sells, assigns, transfers, and conveys to Buyer, and Buyer hereby accepts from Seller, all of Seller's right, title, and interest in and to the following intellectual property that relates to SINIORA (collectively, the "Siniora Intellectual Property"):

(a) all worldwide intellectual property rights, including (i) inventions and improvements thereto (whether or not patentable or reduced to practice), including patents, patent applications, statutory invention registrations, reissues, provisionals, divisionals, continuations, continuations in part, revisions, extensions, and reexaminations thereof, including; (ii) trademarks, service marks, trade names, domain names and domain name registrations, social media accounts and handles, service names, trade dress and logos, including all goodwill associated therewith, and registrations and applications for registration thereof, and all renewals of any of the foregoing, including, but not limited to the trademarks listed in Schedule A (the "Trademarks"); (iii) copyrights and all works of authorship, whether or not registered, and registrations, renewal, and applications for registration thereof; (iv) trade secrets, know-how, inventions, methods and processes, including ideas, algorithms, techniques, protocols, formulae, layouts, designs, specifications, business and marketing plans and proposals, customer and supplier lists, price and cost information; (v) registered and unregistered design rights and any applications therefore; and (vi) all other intellectual property and proprietary rights in connection with the SINIORA brand and business operated by the Seller;

(b) all physical materials, samples, and inventories related to the sale, offering for sale, manufacturing, marketing and other activities in connection with, or relating to items in the foregoing (a); and



MC

(c) all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the Closing Date, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, misappropriation, violation, breach, or default.

The parties acknowledge and agree that from and after the Closing, none of Seller or any of its Affiliates will retain hereunder any direct or indirect right, title or interest in any Siniora Intellectual Property. Where Affiliates means, with respect to any person, any other person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such person, where "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through the ownership of voting securities, by contract or otherwise.

2. Purchase Price. In consideration for the Siniora Intellectual Property and the other obligations of Seller pursuant to this Agreement, Buyer or its designee shall, on behalf of itself and/or its Affiliates: (a) pay to Seller two million Dollars ($2,000,000) in cash (the "Purchase Price"). This purchase price includes the Siniora Intellectual Property rights, and all expenses incurred by the Seller related to or in connection with SINIORA including but not limited to advertising, marketing, branding and other supplier and customer outreach activities. After the closing of this transaction, the Buyer will not be liable or responsible for any past expenses incurred by the Seller related to the Siniora Intellectual Property.

3. Closing Date. The closing of the Transaction shall take place by electronic exchange of the closing deliverables contemplated herein on August 19, 2024. The date on which the closing occurs is referred to in this Agreement as the "Closing Date."

4. Closing Deliverables. Contemporaneously with the execution of this Agreement, Seller shall execute a trademark assignment in the form of Schedule B (the "Trademark Assignment") transferring all of Seller's right, title, and interest in and to the Trademarks to Buyer, and deliver fully executed copies thereof to Buyer for countersignature. Upon Seller's execution of the foregoing, Buyer shall remit the Purchase Price to Seller, in immediately available funds, to the accounts specified by Seller below:

Bank Name: JP Morgan Chase

Name on Account: International Golden Foods, Inc.

Account No.: 390003781148

Routing No.: 071000013.

5. Further Assurances; Recordation. From and after the Effective Date, Seller shall execute and deliver to Buyer such assignments and other documents, certificates, and instruments of conveyance in a form reasonably satisfactory to Buyer and suitable for filing with the United States Patent and Trademark Office ("USPTO") and the registries and other recording governmental authorities in all applicable jurisdictions (including with respect to legalization, notarization, apostille, certification, and other authentication) as reasonably necessary to record



V.

ME

and perfect the assignment, and to vest in Buyer all right, title, and interest in and to the Siniora Intellectual Property in accordance with applicable law. From and after the Effective Date, Seller shall provide cooperation and assistance to Buyer and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be reasonably necessary to effect, evidence, or perfect the assignment and ownership of the Siniora Intellectual Property. After Buyer is permitted to record the Trademark Assignment as provided in Section 4, Seller and/or its legal representatives shall, at Seller's expense, transfer to Buyer's legal representatives the available prosecution files associated with the Siniora Intellectual Property. Should the Siniora Intellectual Property be the subject of any future litigation, arbitration, post-grant proceeding before the USPTO, or any other proceeding in the United States involving a third party, Seller shall provide cooperation to Buyer and its successors, assigns, and legal representatives with respect to said litigation, arbitration, post-grant proceeding, or other proceeding. Seller shall not provide cooperation or assistance as a consultant, expert witness, or otherwise for a third party adverse to Buyer, its successors, or assigns, or any of their Affiliates, with respect to any litigation, arbitration, post-grant proceeding, or other proceeding relating to Siniora Intellectual Property.

6. Required Documentation. Prior to the Closing Date, Seller shall provide Buyer with true and correct copies of the following agreements and documentation:

i. Copies of any registrations, applications, or correspondence with any governmental authority or agency regarding or relating to Siniora Intellectual Property; and

ii. The names and contact information and for any co-packers Seller has used in connection with Siniora Intellectual Property, and copies of Seller's contract(s) with any such entities.

7. Representations and Warranties of Seller. Seller represents and warrants to Buyer that the statements contained in this Section 7 are true and correct as of the Effective Date and the Closing Date.

(a) Authority of Seller; Enforceability. Seller has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Seller have been duly authorized by all necessary organizational action of Seller, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Seller, enforceable against Seller in accordance with its terms and conditions.

(b) No Conflicts; Consents. The execution, delivery, and performance by Seller of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (i) violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Seller; (ii) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation; (iii) conflict with, or result in (with or without notice or lapse of time or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of any obligation or loss of any benefit

under, any contract or other instrument to which this Agreement or any of the Siniora Intellectual Property is subject; (iv) violate, conflict with, require consent under, or result in any breach or default under any of provisions of any contract or agreement to which Seller is a party, or (v) result in the creation or imposition of any encumbrances on the Siniora Intellectual Property. No consent, approval, waiver, or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Seller of this Agreement, or to enable Buyer to register, own, and use the Siniora Intellectual Property.

(c) Ownership. Seller exclusively owns all right, title, and interest in and to the Siniora Intellectual Property and has good, valid, and marketable title thereto, free and clear of liens, security interests, and other encumbrances. Seller is in full compliance with all legal requirements applicable to the Siniora Intellectual Property and Seller's ownership and use thereof. No current or former employee, consultant or contractor of Seller, or any of its Affiliates, has any valid claim of ownership, in whole or in part, to any Siniora Intellectual Property or derivative works thereof, or has asserted in writing any such claim of ownership or right. All Siniora Intellectual Property was (i) developed by employees of Seller within the scope of their employment, or (ii) developed by independent contractors who have irrevocably assigned their entire right, title and interest in and to such Siniora Intellectual Property to Seller pursuant to written agreements. All Siniora Intellectual Property is subsisting, in full force and effect, valid, and enforceable. All Siniora Intellectual Property shall be available for use by Buyer immediately after the Closing Date on identical terms and conditions to those under which the Seller owned or used Siniora Intellectual Property immediately prior to the Closing Date.

(d) Trademarks. Schedule A contains a correct, current, and complete list of all trademarks, service marks, brands, certification marks, logos, trade dress, trade names, and other similar indicia of source or origin owned by Seller of as the Effective Date, specifying as to each, as applicable, the mark, jurisdiction, serial number, register, and status.

(e) Legal Actions. There are no actions (including any USPTO or foreign patent authorities' proceedings) settled, pending, or, to Seller's knowledge, threatened (including in the form of offers to obtain a license): (i) alleging any infringement, misappropriation, or other violation of the intellectual property rights of any third party based on the use or exploitation of any Siniora Intellectual Property; (ii) by a third party challenging the validity, patentability, enforceability, issuance, or ownership of any Siniora Intellectual Property or Seller's rights with respect thereto; or (iii) by Seller alleging any infringement, misappropriation, or other violation by any third party of any Siniora Intellectual Property.

(f) Licenses. There are no licenses or similar contractual instruments, whether exclusive or nonexclusive, related to any of the Siniora Intellectual Property. Seller has not authorized any third party to use any Siniora Intellectual Property.

8. Representations and Warranties of Buyer. Buyer represents and warrants to Seller that the statements contained in this Section 8 are true and correct as of the Effective Date.

(a) Authority of Buyer; Enforceability. Buyer has the full right, power, and authority to enter into this Agreement and perform its obligations hereunder. The execution, delivery, and performance of this Agreement by Buyer have been duly authorized by all necessary organizational action of Buyer, and when executed and delivered by both Parties, this Agreement will constitute a legal, valid, and binding obligation of Buyer enforceable against Buyer in accordance with its terms and conditions.

(b) No Conflicts; Consents. The execution, delivery, and performance by Buyer of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (i) violate or conflict with the certificate of incorporation, by-laws, or other organizational documents of Buyer; (ii) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule, or regulation; or (iii) conflict with, or result in (with or without notice or lapse of time, or both), any violation of or default under, or give rise to a right of termination, acceleration, or modification of, any obligation or loss of any benefit under, any contract or other instrument to which this Agreement is subject. No consent, approval, waiver, or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery, and performance by Buyer of this Agreement.

9. Seller Covenants.

(a) Non-Registration of Intellectual Property. None of Seller or any of its Affiliates shall, at any time, or anywhere in the world, seek to register or apply for registration of any Siniora Intellectual Property, adaptions or derivative works thereof, or any marks of indicia that may cause a likelihood of confusion therewith. Seller agrees that any and all goodwill arising from the use of the Siniora Intellectual Property by the Buyer after the Closing will inure solely to the benefit of Buyer and its Affiliates.

(b) Non-Use of Intellectual Property. Unless agreed in writing between the Parties, or as otherwise permitted in this Agreement, Seller and its Affiliates shall not make any use of SINIORA or Siniora Intellectual Property, adaptions or derivative works thereof, or any marks of indicia that may cause a likelihood of confusion therewith anywhere in the world after the Closing, or colorable imitations thereof, in any form, including but not limited to in association goods in Nice classes 29 and 30.

(c) Non-Competition. For a period of five (5) years from the Effective Date, without the prior written consent of Buyer, Seller agrees not to, and to cause its Affiliates not to, directly or indirectly, engage, anywhere in the world, or directly or indirectly (including licensing any intellectual property), own an interest in, license, manage, operate, join, control or participate in or be connected with as a member, agent, partner, equity holder or investor any person who directly or indirectly engages, anywhere in the world, in processed meats, or otherwise interfere in any material respect with Buyer's business relationships and Buyer's customers or suppliers. For clarity, processed meats is considered to be any meat that has been modified to alter taste or shelf life, and includes salting, curing, fermenting, smoking, boiling, frying, or use of chemical preservatives. The forgoing does



V.

MC

not prohibit Seller or its Affiliates from engaging in business and activities relating solely to slaughtered animals or fresh meat provided it refrains from any use of SINIORA (other than as may be expressly agreed in writing by the Parties).

The two parties agree that, after the Transaction Closing Date:

(i) For the processed meat business (canned meat), the Seller will have two options: (a) stop producing and selling processed meat (canned meat) altogether, or (b) in agreement with the Buyer, continue selling processed meat under SINIORA brand for an agreed revenue share arrangement (% of top line), i.e. royalties paid to the Buyer for using the Siniora Intellectual Property until the Buyer begins manufacturing its own product and a distribution agreement with the Seller is reached; and

(ii) For the slaughterhouse / fresh meat business, the Seller will have two options: (a) continue making and selling fresh meat products using a different brand (other than SINIORA), or (b) continue selling fresh meat using SINIORA brand for an agreed revenue share arrangement (% of top line), i.e. royalties paid to the Buyer for using the Siniora Intellectual Property.

(d) Acknowledgment. Seller acknowledges that the non-competition and non-solicitation restrictions contained in this Section 9 are reasonable and necessary to protect the legitimate interests of Buyer and constitute a material inducement to Buyer to enter into this Agreement and consummate the transactions contemplated by this Agreement. In the event that any covenant contained in this Section 9 should ever be adjudicated to exceed the time, geographic, product or service, or other limitations permitted by applicable law in any jurisdiction, then any court is expressly empowered to reform such covenant, and such covenant shall be deemed reformed, in such jurisdiction to the maximum time, geographic, product or service, or other limitations permitted by applicable law. The covenants contained in this Section 9 and each provision hereof are severable and distinct covenants and provisions. The invalidity or unenforceability of any such covenant or provision as written shall not invalidate or render unenforceable the remaining covenants or provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such covenant or provision in any other jurisdiction.

10. Equitable Remedies. Seller acknowledges that (a) a breach or threatened breach by Seller of any of its obligations under this Agreement may give rise to irreparable harm to Buyer for which monetary damages would not be an adequate remedy; and (b) if a breach or a threatened breach by Seller of any such obligations occurs, Buyer will, in addition to any and all other rights and remedies that may be available to such Party at law, at equity, or otherwise in respect of such breach, be entitled to seek equitable relief, including a restraining order, an injunction, specific performance, and any other relief that may be available from a court of competent jurisdiction, without any requirement to (i) post a bond or other security; or (ii) prove actual damages or that monetary damages will not afford an adequate remedy.



MC

11. Confidentiality. Neither Party shall disclose to any third party the terms of this Agreement, other than (a) to its employees, agents, and advisors (including financial advisors, lawyers and accountants) on a need-to-know basis; (b) to existing and potential investors, merger partners and acquirers, including their respective agents and advisors (including financial advisors, lawyers and accounts), on a need-to-know basis; subject, in each case (a) and (b), to customary obligations of confidentiality; and (c) for prosecuting or defending any disputes arising under this Agreement. If either Party is compelled to disclose any terms of this Agreement, whether by judicial or administrative process or by other requirements of law, such Party shall: (i) promptly notify the other Party in writing; (ii) disclose only that portion of such information that it is advised by counsel in writing is legally required to be disclosed; and (iii) at the other Party's reasonable request and expense, use commercially reasonable efforts to assist the other Party in obtaining an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.

12. Miscellaneous.

(a) Interpretation. For purposes of this Agreement, (i) the words "include," "includes," and "including" are deemed to be followed by the words "without limitation"; (ii) the word "or" is not exclusive; and (iii) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Sections, Schedules, and Exhibits refer to the Sections of, and Schedules and Exhibits attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement is intended to be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Schedules and Exhibits referred to herein are intended to be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

(b) Notices. All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given: (i) when delivered by hand (with written confirmation of receipt); (ii) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (iii) on the date sent by facsimile or email (with confirmation of transmission) if sent during normal business hours of the recipient; or (iv) on the tenth (10) day after the date mailed, by certified or registered mail (in each case, return receipt requested, postage prepaid). Such communications must be sent to the respective Parties at the following addresses or at such other address for a Party as shall be specified in a notice given in accordance with this Section 12(b):

If to Seller:

International Golden Foods, Inc,
819 Industrial Dr.,
Bensenville, IL 60106
email: info@goldenfood.com

If to Buyer:

PO Box 191, Amman, The Hashemite Kingdom of Jordan, 11512
Tel: +962 6 5002222
e-mail: sharifmk@siniorafood.com

(c) Entire Agreement. This Agreement, together with the documents to be delivered hereunder, and all related Schedules and Exhibits, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement, the documents to be delivered hereunder, and the related exhibits and schedules, the statements in the body of this Agreement shall control.

(d) Indemnification. Seller shall indemnify, defend, and hold harmless Buyer and its Affiliates, officers, directors, employees, agents, successors, and assigns, from and against all losses arising out of or in connection with any third party claim, suit, action, or proceeding (each, a "Third-Party Claim") relating to any actual or alleged: (a) breach by Seller of any representation, warranty, covenant, or obligation under this Agreement; (b) Seller's use of Siniora Intellectual Property, including any infringement, dilution, or other violation of any intellectual property rights relating to the, promotion, advertising, distribution or sale of SINIORA meats by or on Seller's behalf; or (c) any product liability claim involving or relating to goods that Seller sold, offered for sale, manufactured or had manufactured, that relate to, are marked with, or include Siniora Intellectual Property, whether before, on, or after the Closing Date.

(e) Insurance. Seller shall procure and maintain, at its sole cost and expense, liability insurance for a period of 1 year after the Closing Date. This liability insurance provided shall include Commercial General Liability, Automobile Liability, and Umbrella Liability, consistent with the coverage types and limits specified in Certificate Number: CL23122819133 in Schedule C (the "Certificate of Liability Insurance") provided by the Seller. Seller shall provide Buyer with copies of the certificates of insurance and shall not do anything to invalidate such insurance. All insurance policies required pursuant to this section must:



MC

(i) be issued by insurance companies reasonably acceptable to Buyer;

(ii) provide that such insurance carriers give Buyer at least thirty (30) days' prior written notice of cancellation or non-renewal of policy coverage; *provided that,* prior to such cancellation, Seller has new insurance policies in place that meet the requirements of this section;

(iii) waive any right of subrogation of the insurers against Buyer or any of its Affiliates;

(iv) provide that such insurance be primary insurance and any similar insurance in the name of and/or for the benefit of Buyer is excess and non-contributory; and

(v) name Buyer, including, in each case, all successors and permitted assigns, as additional insureds.

Upon the conclusion of the 1-year insurance coverage, the Buyer shall have the right, at its sole discretion and expense, to renew the policy under the same terms with the current provider, modify the contract terms, or cancel the policy entirely.

(f) Survival. All representations, warranties, covenants, and agreements contained herein shall continue in full force and effect following the date hereof.

(g) Severability. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

(h) Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

(i) Governing Law; Venue. All matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois without giving effect to any choice or conflict of law provision or rule. Any legal suit, action, or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby shall be instituted in the federal courts of the United States of America or the courts of the State of Illinois in each case with jurisdiction of County DuPage and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such legal suit, action, or proceeding.

(j) Voluntary Agreement. This Agreement has been prepared by the combined efforts of, and reviewed by, the Parties and their respective attorneys. Each Party has had the opportunity to consult with its attorney and hereby acknowledge and warrant that this

Agreement was carefully reviewed in its entirety by the undersigned and that this Agreement was signed and executed voluntarily and without reliance upon any statement or representation of or by any other Party, person or entity, or any representative or agent of same. For the purposes of interpretation, the language of this Agreement shall be deemed to be the language of each Party and no Party shall be deemed to be the drafting Party for purposes of resolving ambiguities which may be contained herein.

(k) Expenses. Each Party shall bear its respective attorneys fees and costs, including taxes, incurred in completing its responsibilities under this Agreement, unless otherwise noted herein.

(l) Amendment and Modification. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party.

(m) Waiver. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; and any single or partial exercise of any right, remedy, power, or privilege hereunder shall not preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

(n) Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF**, Seller and Buyer have caused this Agreement to be executed as of the Effective Date by their respective duly authorized officers.

| | |
|---|---|
| **SINIORA FOOD INDUSTRIES COMPANY** | **International Golden Foods, Inc.** |
| **(Buyer)** | **(Seller)** |
| By: ______________ | By: ______________ |
| Name: Tarek Alaggad | Name: Mansour Amiran |
| Title: Chairman | Title: President |
| Date: 15th of August 2024 | Date: 15th of August 2024 |

**SCHEDULE A**

**TRADEMARKS**

1. SINIORA, Registration No. 2,853,886.



MC

## SCHEDULE B

## TRADEMARK ASSIGNMENT

**WHEREAS,** International Golden Foods, Inc., a corporation incorporated under the laws of the State of Illinois (the "ASSIGNOR") is the owner of all right, title and interest in, to and under the trademark set forth below (the "Trademark"):

| Ctry | Serial No. | Filing Date | Status | Regist. No. | Regist. Date | Mark |
|---|---|---|---|---|---|---|
| U.S. | 78/269,871 | 7/2/2003 | Live | 2,853,886 | Jun. 15, 2004 | SINIORA |

WHEREAS, ASSIGNOR agrees to assign and deliver to SINIORA FOOD INDUSTRIES COMPANY, a public shareholding limited company incorporated under the laws of the Hashemite Kingdom of Jordan and registered at the Companies Controller Department under number 459, whose registered address is at PO Box 191, Amman 11512, The Hashemite Kingdom of Jordan, (the "ASSIGNEE") all of its right, title and interest in, to and under the Trademark free and clear of all liens, and ASSIGNEE has agreed to accept such assignment.

**NOW, THEREFORE,** for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed that:

1. Assignment. ASSIGNOR hereby irrevocably sells, transfers, conveys, assigns and delivers to ASSIGNEE (i) all of its right, title and interest in and to the Trademark, whether statutory or at common law, including all registrations and applications therefor, (ii) the right to sue and recover for all past, present and future infringements, misappropriations and other violations of the Trademark (including, without limitation, the right to receive all monies, proceeds, settlements and recoveries in connection therewith and to obtain equitable relief in respect of such infringements, misappropriations and other violations), (iii) the goodwill associated with such Trademark, the same to be held and enjoyed by ASSIGNEE to the same extent that such would have been held and enjoyed by ASSIGNOR had this assignment not been made, free and clear of all liens, and (iv) all other rights of any kind whatsoever of ASSIGNOR accruing thereunder or pertaining thereto. ASSIGNEE hereby accepts the assignment of the Trademark.

2. Acknowledgment. ASSIGNOR hereby acknowledges that from and after the date hereof, ASSIGNEE shall be the exclusive owner of all of ASSIGNOR'S right, title and interest in and to the Trademark.

3. Counterparts. This assignment may be executed in two or more counterparts, which together shall constitute a single agreement. Delivery of an executed counterpart of a signature page to this assignment by facsimile, .pdf, or electronic mail intended to preserve the original graphic and pictorial appearance of the signature shall be effective as delivery of a manually executed original counterpart of this assignment.

[SIGNATURE PAGES FOLLOW]



MC

**International Golden Foods, Inc.,**

By: ______________________________

Name: Mansour Amiran
Title: President
Date: August 15th, 2024

This TRADEMARK ASSIGNMENT is acknowledged and accepted by ASSIGNEE.

**SINIORA FOOD INDUSTRIES COMPANY**

By: ______________________________

Name: Tarek Alaggad
Title: Chairman
Date: 15th of August 2024

siniora

# SCHEDULE C

## CERTIFICATE OF LIABILITY OF INSURANCE

ACORD®

**CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY) 08/05/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER
Linda Lee Enterprises Inc
DBA FTS Insurance
14045 W. Petronella Dr., Ste. 2
Libertyville IL 60048

CONTACT NAME: Anita Rhoads
PHONE (A/C, No, Ext): (847) 793-0775 FAX (A/C, No): (847) 793-0776
E-MAIL ADDRESS: anita@ftsinsurance.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Rockford Mutual Insurance Company | 27065 |
| INSURER B : | |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

INSURED
International Golden Foods Inc
819 Industrial Drive
Bensenville IL 60106

COVERAGES CERTIFICATE NUMBER: CL23122819133 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | [X] COMMERCIAL GENERAL LIABILITY; [ ] CLAIMS-MADE [X] OCCUR; GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC; OTHER | Y | | CP000045967 000 | 01/01/2024 | 01/01/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY; [ ] ANY AUTO; [ ] OWNED AUTOS ONLY [ ] SCHEDULED AUTOS; [X] HIRED AUTOS ONLY [X] NON-OWNED AUTOS ONLY | | | CP000045967 000 | 01/01/2024 | 01/01/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | [X] UMBRELLA LIAB [X] OCCUR; EXCESS LIAB CLAIMS-MADE; DED [X] RETENTION $ 10,000 | | | UC000060115 000 | 01/01/2024 | 01/01/2025 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [ ] (Mandatory in NH); If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
SINIORA FOOD INDUSTRIES COMPANY PLC IS AN ADDITIONAL INSURED

CERTIFICATE HOLDER
SINIORA FOOD INDUSTRIES COMPANY PLC
Amman, Jordan

CANCELLATION
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03) The ACORD name and logo are registered marks of ACORD



MC

# EXHIBIT B

8536116

# THE UNITED STATES OF AMERICA

TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

October 22, 2024

THE ATTACHED U.S. TRADEMARK REGISTRATION *2,853,886* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM *June 15, 2004*
*2nd* RENEWAL FOR A TERM OF *10* YEARS FROM *June 15, 2024*
*Section 8 & 15*

SAID RECORDS SHOW TITLE TO BE IN:
*SINIORA FOOD INDUSTRIES COMPANY*
*A JORDAN PUBLIC SHAREHOLDING LIMITED COMPANY*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

Pam Grant

Pam Grant
Certifying Officer

Int. Cl.: 29

Prior U.S. Cl.: 46

Reg. No. 2,853,886

United States Patent and Trademark Office

Registered June 15, 2004

## TRADEMARK
PRINCIPAL REGISTER

# SINIORA

GOLDEN TRADING COMPANY, INC. (ILLINOIS CORPORATION)
819 INDUSTRIAL DRIVE
BENSENVILLE, IL 60106

FOR: MEAT, IN CLASS 29 (U.S. CL. 46).

FIRST USE 3-26-2003; IN COMMERCE 3-26-2003.

SER. NO. 78-269,871, FILED 7-2-2003.

ALICE SUE CARRUTHERS, EXAMINING ATTORNEY

# EXHIBIT C

An official website of the United States government Here's how you know



## Trademark search



### Please read

**Use our new image search feature:** Log into your USPTO.gov account and select "Image search" from the drop-down or select the camera icon in the search box. Learn more on our Trademark search system updates page.

Registration number 2853886

**Result 1 of 1** for 2853886



**Trademark**
No image for typed drawing

**Wordmark**
SINIORA

**Serial number**
78269871

**Registration number**
*2853886*

**Filing date**
2003-07-02

**Registration date**
2004-06-15

**Status**
LIVE REGISTERED

**Status date**
2024-07-23

**Registration type**
PRINCIPAL

**Case status**
The registration has been renewed.

**Publication date**
2004-03-23

**Class**
029

**TM5 Status**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Feedback

## Goods and services

IC 029: MEAT. | **First Use Anywhere:** *March 26, 2003* | **First Use in Commerce:** *March 26, 2003*

## Current owner

### Name

SINIORA FOOD INDUSTRIES COMPANY

### Address

KING ABDULLAH II BIN AL-HUSSEIN INDUSTRIAL ESTATE
SAHAB 191 AMMAN 11512
JORDAN

### Entity type

PUBLIC SHAREHOLDING LIMITED COMPANY

### Organized

JORDAN

### Ownership transitions

2 assignments

## Mark information

### Mark literal element

SINIORA

### Standard character claim

Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

### Mark type

TRADEMARK

### Mark drawing code

(1) Typed drawing

### Description

N/A

### Translation

N/A

### Transliteration

N/A

### Disclaimer

N/A

### Design codes

Feedback

## Basis information

### Filed

1(a)

### Currently

1(a)

## Attorney information

### Name

Susan Meyer

**Address**
UB Greensfelder LLP
200 West Madison St.
Suite 3300, Attn.: IP TM Docket
Chicago Illinois 60606
United States

**Primary email**
ipdocket@greensfelder.com

**Docket number**
48408-888009

## Correspondence information

**Name**
Susan Meyer

**Address**
UB Greensfelder LLP
200 West Madison St.
Suite 3300, Attn.: IP TM Docket
Chicago Illinois 60606
United States

**Email**
ipdocket@greensfelder.com

## Prosecution history and documents

Documents only

**Date** 2024-09-05

**Description** AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP

**Document**

**Proceeding**

**Date** 2024-07-23

**Description** NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED

**Document**

**Proceeding**

**Date** 2024-07-23

**Description** REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS)

**Document**

**Proceeding**

**Date** 2024-07-23

**Description** REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED

Feedback

**Document**

**Proceeding**

**Date** 2024-07-23

**Description** CASE ASSIGNED TO POST REGISTRATION PARALEGAL

**Document**

**Proceeding**

**Date** 2024-07-23

**Description** Notice of Acceptance Renewal - Email

**Document** Notice of Acceptance Renewal - Email

**Proceeding**

**Date** 2024-04-29

**Description** TEAS SECTION 8 & 9 RECEIVED

**Document**

**Proceeding**

**Date** 2024-04-29

**Description** Specimen

**Document** Specimen

**Proceeding**

**Date** 2024-04-29

**Description** PR-Section 8 and 9

**Document** Section 8 and 9

**Proceeding**

**Date** 2023-06-15

**Description** COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED

**Document**

**Proceeding**

**Date** 2023-06-15

**Description** Courtesy E-Reminder of Sec. 8/Sec. 9

**Document** E-Reminder §§8 & 9

Feedback

**Proceeding**

**Date** 2019-04-29

**Description** ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED

**Document**

**Proceeding**

**Date** 2019-04-29

**Description** TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED

**Document**

**Proceeding**

**Date** 2019-04-29

**Description** TEAS Rev, App and/or COA of Atty/Dom.Rep

**Document** TEAS Rev/App/COA

**Proceeding**

**Date** 2019-03-19

**Description** WITHDRAWAL OF ATTORNEY GRANTED

**Document**

**Proceeding**

**Date** 2019-03-19

**Description** TEAS WITHDRAWAL OF ATTORNEY RECEIVED

**Document**

**Proceeding**

**Date** 2019-03-19

**Description** TEAS Withdrawal of Attorney

**Document** TEAS Withdraw Atty

**Proceeding**

**Date** 2018-09-13

**Description** ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED

**Document**

**Proceeding**

Feedback

**Date** 2018-09-13

**Description** TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED

**Document**

**Proceeding**

---

**Date** 2018-09-13

**Description** TEAS Rev, App and/or COA of Atty/Dom.Rep

**Document** TEAS Rev/App/COA

**Proceeding**

---

**Date** 2017-07-11

**Description** ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED

**Document**

**Proceeding**

---

**Date** 2017-07-11

**Description** TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED

**Document**

**Proceeding**

---

**Date** 2017-07-11

**Description** TEAS Rev, App and/or COA of Atty/Dom.Rep

**Document** TEAS Rev/App/COA

**Proceeding**

---

**Date** 2017-05-02

**Description** ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED

**Document**

**Proceeding**

---

**Date** 2017-05-02

**Description** TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED

**Document**

**Proceeding**

---

**Date** 2017-05-02

Feedback

**Description** TEAS Rev, App and/or COA of Atty/Dom.Rep

**Document** TEAS Rev/App/COA

**Proceeding**

**Date** 2014-03-08

**Description** NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED

**Document**

**Proceeding**

**Date** 2014-03-08

**Description** REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS)

**Document**

**Proceeding**

**Date** 2014-03-08

**Description** REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED

**Document**

**Proceeding**

**Date** 2014-03-08

**Description** CASE ASSIGNED TO POST REGISTRATION PARALEGAL

**Document**

**Proceeding**

**Date** 2014-03-08

**Description** Notice-Acceptance-Renewal

**Document** Notc-Accept-Renewal

**Proceeding**

**Date** 2014-02-19

**Description** REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED

**Document**

**Proceeding**

**Date** 2014-02-19

**Description** TEAS SECTION 8 & 9 RECEIVED

Feedback

**Document**

**Proceeding**

**Date** 2014-02-19

**Description** Specimen

**Document** Specimen

**Proceeding**

**Date** 2014-02-19

**Description** PR-Section 8 and 9

**Document** Section 8 and 9

**Proceeding**

**Date** 2013-07-10

**Description** AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP

**Document**

**Proceeding**

**Date** 2010-05-03

**Description** Paper Correspondence Incoming

**Document** Paper Corresp. Incom

**Proceeding**

**Date** 2010-01-01

**Description** REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK.

**Document**

**Proceeding**

**Date** 2010-01-01

**Description** Notice of Acceptance Acknowledgement

**Document** Notice Of Accept-Ack

**Proceeding**

**Date** 2009-12-30

**Description** CASE ASSIGNED TO POST REGISTRATION PARALEGAL

**Document**

Feedback

**Proceeding**

**Date** 2009-12-18

**Description** TEAS SECTION 8 & 15 RECEIVED

**Document**

**Proceeding**

**Date** 2009-12-18

**Description** Specimen

**Document** Specimen

**Proceeding**

**Date** 2009-12-18

**Description** Section 8 and 15

**Document** Section 8 and 15

**Proceeding**

**Date** 2004-06-15

**Description** REGISTERED-PRINCIPAL REGISTER

**Document**

**Proceeding**

**Date** 2004-06-15

**Description** Registration Certificate

**Document** Registration Certif.

**Proceeding**

**Date** 2004-03-23

**Description** PUBLISHED FOR OPPOSITION

**Document**

**Proceeding**

**Date** 2004-03-03

**Description** NOTICE OF PUBLICATION

**Document**

**Proceeding**

Feedback

**Date** 2004-03-03

**Description** Notice of Publication

**Document** Notice of Publicatn

**Proceeding**

---

**Date** 2004-01-08

**Description** APPROVED FOR PUB - PRINCIPAL REGISTER

**Document**

**Proceeding**

---

**Date** 2004-01-02

**Description** EXAMINERS AMENDMENT MAILED

**Document**

**Proceeding**

---

**Date** 2003-12-31

**Description** Notation to File

**Document** Notation to File

**Proceeding**

---

**Date** 2003-12-30

**Description** Notation to File

**Document** Notation to File

**Proceeding**

---

**Date** 2003-12-30

**Description** Examiners Amendment

**Document** Examiners Amendment

**Proceeding**

---

**Date** 2003-12-12

**Description** NON-FINAL ACTION MAILED

**Document**

**Proceeding**

---

**Date** 2003-12-10

Feedback

**Description** Offc Action Outgoing

**Document** Offc Action Outgoing

**Proceeding**

**Date** 2003-12-05

**Description** ASSIGNED TO EXAMINER

**Document**

**Proceeding**

**Date** 2003-12-05

**Description** XSearch Search Summary

**Document** XSearch Srch Summary

**Proceeding**

**Date** 2003-07-02

**Description** Specimen

**Document** Specimen

**Proceeding**

**Date** 2003-07-02

**Description** Drawing

**Document** Drawing

**Proceeding**

**Date** 2003-07-02

**Description** Application

**Document** application

**Proceeding**

Items per page: 60 1 – 60 of 60

Feedback

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

N/A

## Maintenance information

### Declaration

§9 Renewal Granted

§8 (10 year) - Accepted

### Declaration of incontestability

§15 - Acknowledged

### Process status

N/A

### Office action

N/A

### Next form to file

§8 Declaration and §9 Application for Renewal

### Earliest renewal date

2033-06-15

### Latest renewal date without additional fee

2034-06-15

### Latest renewal date with additional fee

2034-12-15


## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

your@email.com Subscribe

About the USPTO • Search for patents • Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

Feedback

Follow us

# EXHIBIT D

Date: 15th of August 2024

**Distribution Agreement Framework**

The purpose of this document is to provide a directional framework for the distribution agreement (the "**Distribution Agreement**") between the parties referred to below: **Siniora Food Industries Company,** a public shareholding limited company**,** as the **"Supplier"** and **International Golden Foods Inc.** as the **"Distributor"**. This agreement sets out the main principles of the Distribution agreement and is non exhaustive. After signing this document, the two parties will engage in a 6-month *Evaluation Period* during which they will detail the full parameters of the Distribution Agreement including: product range, volumes, pricing, and commercial terms. This document is strictly confidential and should not be disclosed to any person other than the parties' legal advisors without the prior written consent of Siniora Food Industries Company.

**Outline of Main Principles of the Distribution Agreement:**

| | |
|---|---|
| ***Supplier:*** | Siniora Food Industries Company or an affiliate thereof, as designated by it |
| ***Distributor:*** | International Golden Foods Inc. |
| ***Subject Matter:*** | Distribution of processed meat products of the Supplier, marketed under the Siniora brand or any of the other brands within the Siniora Food Industries Company portfolio |
| ***Products*** | Processed meat products manufactured and packed under the Siniora trademarks; list of Products to be discussed and agreed between the parties during the Evaluation Period |
| ***Territory*** | The United States of America (USA) |
| ***Term*** | 2 years from signing the Distribution Agreement, to be renewed automatically [for additional 2 year term[s]], unless otherwise notified in writing by either party at least 3 months before term maturity (end of the 2 years) |
| ***Exclusivity*** | Distributor will be the Supplier's exclusive distributor of |

| | |
|---|---|
| | the Products in the Territory during the Term |
| ***Non-Compete*** | Distributor may not distribute other products considered in direct competition with the Supplier's processed meat product portfolio during the Distribution Agreement Term and for a period of 2 years thereafter<br><br>Distributor will be allowed to distribute fresh meat products |
| ***Allocation of responsibilities*** | Supplier will be responsible for product development, R&D, manufacturing (including managing the relationships with Co-packers). Distributor will be responsible for sales and distribution. Allocation of marketing activities and responsibilities to be discussed in the Evaluation Period |
| ***Evaluation Period*** | From the signing of this Distribution Agreement Framework, both parties will have six months to agree on the terms of the Distribution Agreement and the five-year Business Plan, which will include but not be limited to: portfolio of Products, minimum volumes, price, forecasts, and other relevant details.<br><br>If, after the six-month period after the date of signing of this Distribution Agreement Framework, the parties have not reached an agreement on the Business Plan and signed the Distribution Agreement, this Distribution Agreement Framework will be terminated and no longer be valid, with no subsequent obligation or liability on the part of either party, unless both parties agree in writing to extend the Evaluation Period (in which case this Distribution Agreement Framework shall apply to such Evaluation Period as extended). |
| ***Distribution Agreement*** | During the Evaluation Period, the two parties will develop a full-fledged Distribution Agreement that includes all necessary details including but not limited to:<br><br>- 5-year business plan<br>- Sales and marketing strategy |



MC

| | |
|---|---|
| | - Split of responsibilities across branding, marketing and advertising between Supplier and Distributor<br>- Portfolio of Products in Distribution Agreement<br>- Commercial terms, pricing and margins<br>- Minimum / committed volumes and forecasts<br>- Other legal matters |
| ***Required Documentation*** | During the Evaluation period, the Distributor commits to provide the Supplier with the required information necessary to complete the evaluation including but not limited to: insights on value-chain, prices and volumes |
| ***Licenses and permits*** | Distributor to hold and maintain all licenses and permits required for the distribution of the Products across the Territory during the Term. |
| ***Termination*** | Towards the end of the then-current term (2 years), either party can choose not to renew and terminate the contract with a 3-month notice (prior to the maturity of the relevant 2-year period)<br>In addition, the Supplier will be allowed to terminate the Distribution Agreement at any point under the following conditions:<br>- Failure by the Distributor to meet minimum committed volume / revenue [and other KPIs in the Business Plan];<br>- payment delays by the Distributor;<br>- unsatisfactory credit status of Distributor;<br>- change of control of Distributor (including merger and asset sale) without Supplier consent; or<br>- Other breach of contract terms by Distributor. |



Mc

| | |
|---|---|
| ***Confidentiality*** | During the Evaluation period, the two Parties commit not to disclose any data acquired from the other Party in the Evaluation or use that data for any purpose other than developing and completing the Distribution Agreement between the parties.<br>After the Evaluation period, if the two parties do not conclude a full definitive agreement, the two Parties commit not to disclose information learned during the Evaluation Period or use it for any purpose for a period of 2 years after the conclusion of the Evaluation Period |

SINIORA FOOD INDUSTRIES COMPANY

By_______________

Name: Tarek Alaggad

Title: Chairman

Date: 15th of August 2024

INTERNATIONAL GOLDEN FOODS INC.

By_______________

Name:

Title:

Date: August 15th, 2024

# EXHIBIT E

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423) www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 1

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 2.00 | AH1LB | ALKANATER HALWA-PLAIN 12X1 LB.* | 49.00 | 98.00 |
| 2.00 | AH2LB | ALKANATER HALWA-PLAIN 12 X 2 LBS | 74.00 | 148.00 |
| 2.00 | AHP1L | ALKANATER HALWA-PISTACHIO 12 X 1 LB. | 55.00 | 110.00 |
| 2.00 | AHP2L | ALKANATER HALWA-PISTACHIO 12 X 2 LBS | 89.87 | 179.74 |
| 1.00 | AJWA2LB | AJWA DATE 12 PACK X2LB | 130.00 | 130.00 |
| 1.00 | AJWA400 | AJWA DATE 12PACK X400GR | 60.00 | 60.00 |
| 1.00 | AKO17 | -ALKOURA OLIVE OIL 12 x 500 ML | 68.00 | 68.00 |
| 1.00 | AK6X30 | ALKOURA 6 X 1500 ML | 79.00 | 79.00 |
| 1.00 | AKO34 | ALKOURA OLIVE OIL 6X750 ML | 62.00 | 62.00 |
| 1.00 | AK4X3 | ALKOURA OLIVE OIL 4/3 LITER EXTRA VIRGIN***OLIVE TREE BRAND*** | 100.00 | 100.00 |
| 1.00 | ALMADINA2LB | AL MADINA DATE 12PACK X 907GR | 92.00 | 92.00 |
| 2.00 | AT2LB | ALKANATER TAHINI 12 X 2 LB | 89.00 | 178.00 |
| 1.00 | BHMFM | Bonjour Marshmallows Halal *large size *24 pack x 8.82 oz (250gr) | 30.00 | 30.00 |
| 1.00 | BHMST | Bounjour Marshmallows ***HALAL *MINI***24 pack X 8.82 OZ ***250GR** | 33.60 | 33.60 |
| 1.00 | BND1KL | SAHARA GOLD BRANCH NOOR DATES 12 x 2 lbs | 79.00 | 79.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign________________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423) www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 2

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | BONPAM | BONJOUR POMEGRANATE JUICE 12PACK X1LT | 30.89 | 30.89 |
| 1.00 | CBUCAT2 | CRISPA PASTA ( BUCATINI ) 20 X1 lb | 22.89 | 22.89 |
| 1.00 | CLINGU | CRISPA PASTA ( LINGUINE) 20 X1 lb | 22.89 | 22.89 |
| 1.00 | CRISPA2 | CRISPA VERMICELLI 20 x 1 LB PACK | 23.50 | 23.50 |
| 1.00 | CSPAG1 | CRISPA PASTA (spaghetti #1 ) 20 X1 lb | 22.89 | 22.89 |
| 1.00 | CSPAG2 | CRISPA PASTA (spaghetti #2 ) 20 X1 lb | 22.89 | 22.89 |
| 1.00 | CSPAG3 | CRISPA PASTA (spaghetti #3 ) 20 X1 lb | 22.89 | 22.89 |
| 1.00 | CU2X6 | CUCUMBER PICKLES 6 X 3 KG.(37-45) | 39.89 | 39.89 |
| 1.00 | CU43Z | CUCUMBER PICKLES 12x44 OZ | 50.00 | 50.00 |
| 1.00 | CUL2X6 | CUCUMBER PICKLES LARGE(30-36 ) 6x3KG. | 38.89 | 38.89 |
| 1.00 | CUM110 | CUCUMBER PICKLES(92-110 MINI)6/3 Kg. | 59.00 | 59.00 |
| 1.00 | CUM12P | CUCMBER Midget ***50-60** 12 pack X656 net gr | 29.00 | 29.00 |
| 1.00 | CUS2X6 | CUCUMBER PICKLES SLICED 6 X 3 KG. | 35.00 | 35.00 |
| 1.00 | GCGZ5 | GREEN ZAATAR 12 PACK500 GR | 58.00 | 58.00 |
| 1.00 | GDAR12 | GOLDEN DRY APRICOT ROLL 24/12.oz | 144.00 | 144.00 |
| 1.00 | GDF08S | DRY FIGS 24/8 OZ. | 54.00 | 54.00 |
| 1.00 | GDF1kg | Fancy Golden Dry Fig,s **Lerida 12 x 1kg ***2.2 lb** PRMIUM*****NEW*** | 120.00 | 120.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25 Qty. 171.00

Authorized Sign________________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423)
www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 3

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | GDMK5L | DRY MOLKHIA 400 GR X6 PACK | 36.00 | 36.00 |
| 1.00 | GEG19 | GOLDEN MIN EGGPLANTS 24 X 19 OZ. | 45.00 | 45.00 |
| 1.00 | GEGR10 | GOLDEN EGYPTION RICE 4X10LB | 38.00 | 38.00 |
| 1.00 | GEP13 | GOLDEN EGGPLANTS DIP24 X 14 OZ | 35.00 | 35.00 |
| 1.00 | GGE6L | GOLDEN GRILLED EGGPLANTS (chunk) 6X6LB | 45.00 | 45.00 |
| 1.00 | GGEPP | GOLDEN GRILLED EGGPLANTS**PUREE** 6X6LB | 45.50 | 45.50 |
| 1.00 | GHFEGP | FRIED EGGPLANTS 24 X 454 GR. | 38.00 | 38.00 |
| 1.00 | GHG32 | GOLDEN HOT GIARDINERA 12/32 OZ. | 36.00 | 36.00 |
| 1.00 | GHGE720 | Golden Harvest Grilled Eggplant Salad 12 X630 gr. | 38.40 | 38.40 |
| 1.00 | GHHPP72 | Golden Harvest Hot Peppers PASTE 12x670 gr---23.6 oz | 46.00 | 46.00 |
| 1.00 | GHP19 | GOLDEN HOT PEPPERS 24 x 19 OZ. | 34.00 | 34.00 |
| 1.00 | GHPP12 | GOLDEN HARVEST PEPPER PASTE12PACK***MILD**N.W 23.06 oz670 gr | 48.00 | 48.00 |
| 1.00 | GHT13 | GOLDEN HUMMUS TAHINI 24X14 OZ | 28.00 | 28.00 |
| 1.00 | GHWP1K | GOLDEN WILD PICKLE-CUCUMBER 12 X1KG | 36.00 | 36.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25 Qty. 171.00

Authorized Sign________________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423)
www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 4

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | GJRB2LB | GOLDEN JASMINE RICE****Brown **** 2LB X12PK | 39.00 | 39.00 |
| 1.00 | GJRB5L | GOLDEN JASMINE RICE****Brown **** 5LB X10PK | 49.00 | 49.00 |
| 1.00 | GLB20 | GOLDEN LUPINI BEANS 12 X 35oz | 41.50 | 41.50 |
| 1.00 | GOS60 | OLIVE SALAD W/ THYME 12x600gr | 45.00 | 45.00 |
| 1.00 | GPC19 | GOLDEN PEAS AND CARROTS 24x20 OZ. | 39.50 | 39.50 |
| 1.00 | GPP24 | GOLDEN PRESED BAKING DATES 24x500 GR | 44.00 | 44.00 |
| 1.00 | GSGL2 | GOLDEN STUFFED GRAPE LEAVES 6/ 2 KILO | 64.00 | 64.00 |
| 1.00 | GTP25 oz | GOLDEN HARVEST TOMATO PASTE 12 x 700 gr | 36.00 | 36.00 |
| 1.00 | GTP2X6 | TURNIP PICKLES 6 X2 KG | 36.00 | 36.00 |
| 1.00 | GTP35oz | TURNIP PICKLES 12 X 35 OZ | 30.00 | 30.00 |
| 2.00 | JVD11LB | SAHARA GOLD JUMBO MEDJOOL DATES 11 LBS. | 55.00 | 110.00 |
| 2.00 | JVDEL11 | SAHARA GOLD EXTRA LARGE MEDJOOL DATES 11 LBS. | 44.00 | 88.00 |
| 1.00 | KHUDRI4 | KHUDRI 12PACK X400 GR | 34.00 | 34.00 |
| 2.00 | KJM11 | SAHARA GOLD ** SUPER KING | 65.00 | 130.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign________________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423) www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 5

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | JUMBO***PREMIUM MEDJOOL DATES 11 LBS. | | |
| 2.00 | KJVD2K | SAHARA KING JUMBO MEDJOOL DATE 2KG | 29.00 | 58.00 |
| 1.00 | MD1lb | SAHARA MEDJOUL DATE 12 X 14 oz (EX LARGE) | 65.00 | 65.00 |
| 2.00 | MD2KG | SAHARA GOLD EX LARGE MEDJOOL DATES 2KG | 27.50 | 55.00 |
| 1.00 | MD2LB16 | SAHARA GOLD MEDJOUL DATE 16 x 2 Lbs. (EX LARGE) | 146.00 | 146.00 |
| 1.00 | MD8OZ | SAHARA MEDJOUL DATE 24 X 8 oz (EX LARGE) | 79.00 | 79.00 |
| 1.00 | MICIL4 | Premium Dried Cilantro 4oz/30 | 45.00 | 45.00 |
| 1.00 | MIMIN6 | Dried Mint **6.oz/25 pcs | 44.00 | 44.00 |
| 1.00 | MIPAR4 | Dried Parsely 4oz/30 pcs | 44.00 | 44.00 |
| 1.00 | MIROS5 | Dried Rose Bude 5 OZ/24 | 60.00 | 60.00 |
| 1.00 | MISDT6 | SUN Dried Tomato Slice 6oz | 44.00 | 44.00 |
| 1.00 | MMP85 | MANZO MANGO PULP 6 x 850 GR. | 20.00 | 20.00 |
| 1.00 | ND200 | NOOR DATES 24 X 200 GR.PITTED | 34.00 | 34.00 |
| 1.00 | ODN20oz | Organic Pitted Deglet Nour 12pack X793 gr | 80.00 | 80.00 |
| 1.00 | PAL14 | SPLIT/BLANCH ALMOND 24 X 12 OZ | 120.00 | 120.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign_______________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423) www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 6

**Bill To:**
CRESCENT INTL SUPERMARKET
401 REALTY DR
GRETNA, LA 70056

**Ship to:**
CRESCENT INTL SUPERMARKET
401 REALTY DR
GRETNA, LA 70056

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | PBO3 Lb | PETRA CALAMATA OLIVES 6 X3LB | 42.00 | 42.00 |
| 1.00 | PCM16OZ | COCONUT MACAROON FINE 20/12oz | 90.00 | 90.00 |
| 1.00 | PCOC/12 | COCO-MACAROON SLICES 20/12oz | 90.00 | 90.00 |
| 1.00 | PCP16OZ | TURKISH CHICKPEAS 24 X 16 OZ. | 36.00 | 36.00 |
| 1.00 | PCU19L | PALESTINIAN PICKEL 24x19 oz ( 7-9)**%20 EXTER*** | 42.00 | 42.00 |
| 1.00 | PCU19S | PALESTINIAN PICKEL 24x19 (13-17) PICKLE | 52.00 | 52.00 |
| 1.00 | PDRD28 | GOLDEN DRY DATES 28 oz X12PACK | 56.00 | 56.00 |
| 1.00 | PFA32OZ | FARINA 12PACKx32oz* | 30.00 | 30.00 |
| 2.00 | PJVD11 | SAHARA PALESTINIAN BRAND *** SUPER JUMBO ***PREMIUM MEDJOOL DATE 11LB | 65.00 | 130.00 |
| 2.00 | PJVD2K | SAHARA PALESTINIAN BRAND JUMBO MEDJOOL DATE 2KG | 29.00 | 58.00 |
| 1.00 | PP24Z | GOLDEN PITTED DEGLET NOOR CUP DATES 12x24 OZ. | 49.00 | 49.00 |
| 1.00 | PPC10 | GOLDEN PITTED DEGLET NOOR CUP DATES 24/10 OZ. | 50.00 | 50.00 |
| 1.00 | PPC28 | GOLDEN PITTED DEGLET NOOR DATES 12x28 Oz. | 54.00 | 54.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign________________________________________

**International Golden Foods, Inc.**
819 Industrial Drive
Bensenville, IL 60106
U.S.A.

Voice: 630-860-5552
Fax: 630-860-0855
info@goldenfood.com
1-800-343-RICE (7423) www.goldenfood.com

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 7

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | PRLS16Z | RED LENTILS-SPLIT 24X16 OZ | 36.00 | 36.00 |
| 1.00 | PRLW16Z | RED LENTILS-SPLIT 12X32 OZ | 36.00 | 36.00 |
| 1.00 | PS32CO | SEMOLINA 12X32ozCOURSE | 28.00 | 28.00 |
| 1.00 | PS32OZ | SEMOLINA 12X32oz | 25.00 | 25.00 |
| 1.00 | PSA16 | BLANCHED SLIVERED ALMOND 24x12 OZ. | 120.00 | 120.00 |
| 1.00 | PSS12 | SESAME SEEDS 24PACKx16OZ. | 68.00 | 68.00 |
| 1.00 | PSU/16 | SUMAC 20 X 16 OZ. | 70.00 | 70.00 |
| 1.00 | PWLL16Z | WHOLE LENTILS,LARGE 24X16 OZ. | 48.00 | 48.00 |
| 1.00 | PWLL2lb | WHOLE LENTILS,LARGE 12 x2lb | 36.00 | 36.00 |
| 1.00 | PWLS16Z | WHOLE LENTILS,SMALL 24X16 OZ. | 48.00 | 48.00 |
| 1.00 | SAFAWI400 | SAFAWI DATE 12PACK X400GR | 44.00 | 44.00 |
| 1.00 | SAG50 | SAGE ( MARAMIEH ) 24 X150 GR | 72.00 | 72.00 |
| 10.00 | SLC30 | SINIORA CHICKEN HALAL 12 x 30 OZ. | 84.89 | 848.90 |
| 5.00 | SLCM12 | SINIORA CHICKEN & BEEF LUNCHEON MEAT HALAL 24/12 OZ. | 68.89 | 344.45 |
| 10.00 | SLCM30 | SINIORA CHICKEN & BEEF LUNCHEON MEAT HALAL 12 X 30 OZ. | 102.37 | 1,023.70 |
| 5.00 | SLTT24 | SINIORA TURKEY LUNCHEON HALAL 24/12 OZ. | 69.85 | 349.25 |
| 1.00 | SRK19 | GOLDEN RED KIDNEY BEANS 24X19 | 22.00 | 22.00 |

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | |
| **TOTAL** | **Continued** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign_______________________________________

**International Golden Foods, Inc.**
**819 Industrial Drive**
**Bensenville, IL 60106**
**U.S.A.**

**Voice: 630-860-5552**
**Fax: 630-860-0855**
**info@goldenfood.com**
**1-800-343-RICE (7423)** **www.goldenfood.com**

# INVOICE

Invoice Number: 127657
Invoice Date: 5/14/26
Page: 8

| Bill To: | Ship to: |
|---|---|
| CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 | CRESCENT INTL SUPERMARKET<br>401 REALTY DR<br>GRETNA, LA 70056 |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| C6435 | | C.O.D. | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | | 5/14/26 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.00 | TCUM110 | T-CUCUMBER PICKLES(80-90 MINI)6/3 Kg. | 60.89 | 60.89 |
| 1.00 | ZOOEV1LT | Zaytun Olive Oil EX -VIRGIN 12 X1LT***(LES ACID 0.2 ) | 150.00 | 150.00 |
| 16.00 | BAK1KGS | BAKLAVA ASSORTED 700GR***GIFTPACK***** | 22.00 | 352.00 |
| 7.00 | BAK1KG | BAKLAVA ASSORTED 3LB***GIFTPACK***** | 40.00 | 280.00 |
| 1.00 | STFOIL | TUNA FISH IN OLIVE OIL 48 PACK 6 oz | 95.00 | 95.00 |
| 1.00 | STFVOIL | TUNA FISH IN SOY BEAN OIL 48 PACK 6 oz | 92.00 | 92.00 |
| 1.00 | STFVOILC | TUNA FISH IN SOY BEAN -OIL WITH CHILLE PEPPER 48 PACK 6 oz | 95.00 | 95.00 |
| 1.00 | STFWIL | TUNA FISH IN WATER 48 PACK 6 oz | 87.00 | 87.00 |

| | |
|---|---|
| Subtotal | 9,683.05 |
| Sales Tax | |
| Total Invoice Amount | 9,683.05 |
| Payment/Credit Applied | |
| **TOTAL** | **9,683.05** |

The Title of the Goods Set forth herein shall pass upon payment in full. Service charge of 2% per month will be charged on all past due amou
$ 60.00 charge for all returned Checks. In the event that legal proceedings are instituted for collection of amount due,
Buyer agrees to pay all court costs and attorney fees and any expenses incurred for collection of invoice amount.
Any claims must be made at the time of receipt of goods, Buyer personally guarantees payment.

WT. 4290.25

Qty. 171.00

Authorized Sign________________________________________

# EXHIBIT F


حلال
HALAL
siniora
TM
CHICKEN
LUNCHEON MEAT
NET WT. 12 OZ. (340g)
PRODUCT OF U.S.A. REFRIGERATE AFTER OPENING


سنيوره
لانشون لحم دجاج وبقر
TM
حلال
HALAL
NET WT 29.5 OZ (1 LB 13.5 OZ) 837g


siniora
CHICKEN
LUNCHEON MEAT
NET WT 29.8 OZ (1 LB 13.8 OZ) 845g
PRODUCT OF U.S.A. REFRIGERATE AFTER OPENING


siniora
TURKEY
LUNCHEON LOAF
NET WT. 12 OZ. (340g)
PRODUCT OF U.S.A. REFRIGERATE AFTER OPENING
SELL BY 12/13/2029
4348 209 05:36
siniora
CHICKEN
LUNCHEON MEAT
NET WT. 12 OZ. (340g)


siniora
CHICKEN LUNCHEON MEAT
NET WT. 12 OZ. (340g)
SELL BY 01/10/2028
5010 200 05:48


CALIFORNIA GARDEN
PREMIUM FAVA BEANS
FÈVES DE QUALITÉ SUPÉRIEURE
SELL BY 01/13/2030
5013 261 09:06

# EXHIBIT G


siniora
Al Quds
since 1920
CHICKEN LUNCHEON LOAF
Ready To Serve
Net Weight
Halal
سنيوره
القدس
منذ ١٩٢٠
لانشون دجاج و بقري
حلال
الخلطة الأصلية
لانشون دجاج
الوزن الصافي
12 oz (340g)
CHICKEN & BEEF LUNCHEON LOAF
Net Weight
12 oz (340g)
Ready To Serve
Halal


siniora
Al Quds
since 1920
CHICKEN LUNCHEON
Halal
200g
Net Weight
Ready to Serve

# EXHIBIT H

Buy Bestselling Chia Seeds (https://naturaldate.com/product/miss-spring-black-chia-seeds-rich-in-omega-3-fiber-10z-283-gram/)

Shop Premium Dates (https://naturaldate.com/product-category/dry-fruits/)

Our Policies

International Golden Food (https://naturaldate.com/)

Search product... All Categories Search

Wholesale Portal (https://b2b.igfconnect.com/customers/sign_in)

Home

About Us

Shop

Recipes

Our Blog

Contact Us

Categories

# About Us

## Who We Are

Established in 1986, International Golden Foods has been serving the food industry with quality imported and specialty food products for decades. We supply retailers, restaurants, wholesalers, and food businesses across the United States with a wide selection of dates, grains, legumes, spices, pantry products, and other specialty foods sourced from reliable suppliers around the world.

Founded in 1986, **International Golden Foods, Inc. (IGF)** has grown into a prominent importer and distributor of high-quality food products across the United States. From our headquarters and warehouse in Bensenville, Illinois, we serve national chain stores, independent retailers, and food-service outlets through a robust network of distributors. Our core mission has always been to provide **quality products at competitive prices**, with the goal of achieving **100% customer satisfaction**. We believe in delivering value, consistency, and excellence — whether it's everyday pantry staples or specialty Mediterranean imports. IGF's product portfolio spans a wide variety of categories, including rice, beans, lentils, pickles, olives, dates, tahini, nuts, spices, and more. Our own brands — such as **Golden**, **Siniora**, and **Crispa** — are well established and found in supermarkets and retail outlets throughout the U.S. Through exclusive partnerships with leading international producers, we also bring premium global brands like **Ülker** (Turkey), **Al Kanater** (Lebanon), and **Royal** (India) to the American market. Our facility in Bensenville is strategically located for efficient distribution across the country, enabling us to fulfill orders of any size with speed and reliability. We remain committed to building long-term partnerships, maintaining the highest standards of product integrity, and continuously expanding our range to meet evolving consumer tastes and the needs of our clients. At IGF, we're proud of our heritage — and even prouder of our promise: **to bring the world's finest foods to your table, reliably, affordably, and consistently.

**Sign Up To Newsletter**

**..and receive $29 coupon for first shopping**

(https://www.facebook.com/ (https:// (https://

mibextid=wwXlfr)

International Golden Food (https://naturaldate.com/)

**Contact info:**

819 Industrial Drive, Bensenville, IL 60106.

**Telephone:**

+1 (630) 860 5552 (tel:+1%20(630)%20860%205552)

**Email:**

info@goldenfood.com (mailto:info@goldenfood.com)

## Shop By Category

- Teas & Dried Leaves (https://naturaldate.com/product-category/teas-dried-leaves/)
- Spices & Seasonings (https://naturaldate.com/product-category/spices-seasonings/)
- Honey (https://naturaldate.com/product-category/honey/)
- Rice (https://naturaldate.com/product-category/rice/)
- Condiments & Salts (https://naturaldate.com/product-category/condiments-salts/)
- Beans & Lentils (https://naturaldate.com/product-category/beans-lentils/)
- Dried Fruits & Nuts (https://naturaldate.com/product-category/dried-fruits-nuts/)
- Rice & Grains (https://naturaldate.com/product-category/rice-grains/)
- Herbs (https://naturaldate.com/product-category/herbs/)
- Spreads & Sweet Snacks (https://naturaldate.com/product-category/spreads-sweet-snacks/)
- Food & Beverages (https://naturaldate.com/product-category/food-baverages/)
- Dry Fruits (https://naturaldate.com/product-category/dry-fruits/)
- Herbs, Teas & Dried Leaves (https://naturaldate.com/product-category/herbs-teas-dried-leaves/)
- Pasta (https://naturaldate.com/product-category/pasta/)

## Who We Are

- About Us (https://naturaldate.com/about-us/)
- Our Blogs (https://naturaldate.com/blog/)
- Contact Us (https://naturaldate.com/contact/)
- Privacy Policy (https://naturaldate.com/privacy-policy/)

## Special Offers

- Shop (https://naturaldate.com/shop/)
- Shop by Category (https://naturaldate.com/shop/)
- Sales & Offers (https://naturaldate.com/shop/)
- Recipes (https://naturaldate.com/recipes/)
- Recipes by Category

Copyright © 2026 Golden Foods. All Rights Reserved.

# EXHIBIT I




https://www.foodserviceexpress.com/m-9-international-golden-foods.aspx

Delivered fresh every day from the farm, ranch or boat to your door — call 1-888-352-3663
Contact Us | My Account

FOOD INNOVATIONS®

CATEGORIES Home Videos About Us






# LUNCH MEAT, CHICKEN CANNED SHELF STABLE – 24/12 OZ

- **APN** : 3811791
- **Pack Size** : 24/12 OZ
- **Brand Name** : SINIORA
- **Storage** : Shelf Stable
- **Delivery** : Delivers within 3-5 Business Days

Add to Favorites

Mail This Product

Description

Nutritionals

## Description

Non-Perishable. Ships FedEx Ground (3-5 days). International Golden Foods, Siniora. Versatile zabiha chicken luncheon meat adds protein to your meal. Only 1g carbohydrate and 120 calories per 2 oz. slice. Diet/Cat: Halal. Kosher. For additional product in

Share On Facebook | Tweet This Product | Pin This Product

https://www.foodinno.com/product/lunch-meat-chicken-canned-shelf-stable-24-12-oz/

Delivered fresh every day from the farm, ranch or boat to your door — call 1-888-352-3663 Contact Us My Account






# LUNCH MEAT, TURKEY CANNED SHELF STABLE – 12/12 OZ

- **APN** : 3811783
- **Pack Size** : 12/12 OZ
- **Brand Name** : SINIORA
- **Storage** : Shelf Stable
- **Delivery** : Delivers within 3-5 Business Days

Add to Favorites

Mail This Product

Description

Nutritionals

## Description

Non-Perishable. Ships FedEx Ground (3-5 days). International Golden Foods, Siniora. Versatile turkey luncheon meat adds protein to your meal. Only 1 g carbohydrate and 110 calories per 2 oz. slice. Diet/Cat: Halal. Kosher. For additional product informati

Share On Facebook Tweet This Product Pin This Product

https://www.foodinno.com/product/lunch-meat-turkey-canned-shelf-stable-12-12-oz/